No. 17-71867

IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

In re RODRIGO ZERMENO-GOMEZ, GUSTAVO HERNANDEZ-GUTIERREZ, MARTIN RIOS-ARIAS, Petitioners.

RODRIGO ZERMENO-GOMEZ, GUSTAVO HERNANDEZ-GUTIERREZ, MARTIN RIOS-ARIAS, Petitioners,

v.

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ARIZONA, Respondent Court,

and

UNITED STATES OF AMERICA,
Real Party in Interest.

**REPLY IN SUPPORT OF EMERGENCY MOTION FOR INJUNCTION PENDING RESOLUTION OF PETITION FOR MANDAMUS UNDER FRAP 8 AND CIRCUIT RULE 27-3**

D.C. Nos. 17-MJ-09200-ESW-1, CR-17-00803-PHX-DLR (MHB), 17-01387-M

JON M. SANDS
Federal Public Defender
District of Arizona

DANIEL L. KAPLAN
Assistant Federal Public Defender
850 West Adams Street, Suite 201
Phoenix, Arizona 85007-2730
(602) 382-2700

**REPLY TO GOVERNMENT'S RESPONSE**

**I.    Introduction**

In their Emergency Motion for Injunction Pending Resolution of Petition for Mandamus under FRAP 8 and Circuit Rule 27-3 (DktEntry: 2) (Mtn.), movants demonstrated that the traditional factors governing the necessity of injunctive relief are all present here. The government's response (DktEntry: 6-1) (Resp.) generally ignores these factors, focusing instead on the assertions that movants were required to "move for injunctive relief in the district court" before seeking relief in this Court, and that the judges of this district are actually "applying *Sanchez-Gomez*." The government's assertions are demonstrably incorrect.

**II.    The government's assertion that movants were required to "move for injunctive relief in the district court" overlooks the fact it would be impossible for the district court to grant the relief movants seek.**

The primary focus of the government's response is the assertion that FRAP 8 required movants to "move for injunctive relief in the district court" before seeking an injunction in this Court. Resp. at 1. This assertion is misguided, because it would be impossible for movants to secure the relief they seek from the district court.

Movants seek an injunction directed to the entire district court, requiring it to comply with *United States v. Sanchez-Gomez*, 859 F.3d 649 (9th Cir. 2017),

notwithstanding the stay of the mandate in that case. Mtn. at 1-3. The government identifies no legal authority for the proposition that a district judge can enjoin her fellow judges – and, presumably, herself – to comply with a decision of this Court while the mandate is stayed. And this is plainly impossible, because "[a] decision of a federal district court judge is not binding precedent in either a different judicial district, the same judicial district, or even upon the same judge in a different case." *Camreta v. Greene*, 563 U.S. 692, 709 n.7 (2011) (internal quotation marks omitted). It follows that even if movants (and/or similarly situated defendants) were to secure favorable rulings from every judge of this district, these rulings would not begin to approximate the relief that movants seek, because no judge would ever be bound to follow them in any other case.

Moreover, setting aside the impossibility of securing the district-wide injunction that movants seek from the district court, movants and similarly situated defendants cannot even secure effective *individualized* relief through challenges brought before district judges. Even a favorable ruling from an individual district judge would not erase the unconstitutional shackling that the defendant would have already experienced, by the time such a challenge could be ruled upon.

In sum, the government's suggestion that movants' request for relief should be denied because they failed to "move for injunctive relief in the district court" is

misguided. Resp. at 1. In order for a motion for injunction filed initially in this Court to be proper, FRAP 8 only requires that securing the relief sought in the district court be "impracticable" – here it is literally *impossible*. FRAP 8(a)(2)(A)(i).

### III. The government's representation that the judges of this district are complying with *Sanchez-Gomez* is inaccurate.

The government accuses movants of misrepresenting the state of affairs in this district. But the government's own evidence confirms that it is not movants but the government that misstates the facts, and demonstrably so.

The government represents that "the district court judges in Arizona have not even been given a chance to judge the issue once." Resp. at 4-5. But the government's representative was present in the courtroom on June 19, 2017, when an Assistant Federal Public Defender cited *Sanchez-Gomez* to a district judge, asking that her client be unshackled in his final disposition hearing in *United States v. Daniels*, No. 13-cr-08195-PCT-GMS. App. A at 2:12-13. The district judge refused to comply with *Sanchez-Gomez*, explaining: "it does seem to me that in light of the 90-day stay, and because we want to do this in an orderly way and haven't really considered it, I'm going to take advantage of the stay, with all due respect to your client." *Id.* at 3:12-15.

3

The government's representative was present in the same district judge's courtroom on June 5, 2017, when another Assistant Federal Public Defender cited *Sanchez-Gomez* in support of her request that her client be unshackled in the sentencing hearing in *United States v. Cardenas-Lopez*, No. 17-cr-00543-GMS. App. B at 2:23-25. The district judge denied the request, noting that "the mandate has not yet issued in Sanchez-Gomez." *Id*. at 3:8-9.

The government's representative was also present in the courtroom when a magistrate judge of this district stated on the record that he had "received direction" from the chief judge of the district to the effect that "the Court" should adhere to its pre-*Sanchez-Gomez* practice until "any stay is lifted." Petition for Writ of Mandamus (DktEntry: 1-2) (Petn.) at 71:2-7. The government strives to avoid the clear import of this statement, suggesting that the magistrate judge may have been referring to a private "direction" aimed at himself alone. Resp. at 7. But the record shows that the chief judge issued a "direction" applicable to "the Court," and not merely to a single magistrate judge. Petn. at 71:6. Moreover, the government offers no explanation as to why the chief judge would take the odd step of issuing such a "direction" solely to a single magistrate judge in Yuma.

The government posits that the chief judge could not have mandated a policy because if he had, the district judges would not be bothering to sit on a committee

4

convened to address the question. Resp. at 8-9. But the chief judge's "direction" related to the question of *whether* the court must comply with *Sanchez-Gomez* while the mandate is stayed – it has nothing to do with the question of *how* the court intends to comply with *Sanchez-Gomez* when it takes effect, which is the subject under review by the committee to which the government refers.

      The government further asserts that the fact that some magistrate judges have been "formulating their own procedures" with regard to shackling shows that the chief judge could not have "mandated" a district-wide policy. Resp. at 9. But the chief judge's "direction" did not mandate that judges *not* comply with *Sanchez-Gomez* – rather, it excused them from any belief that they *must* comply with *Sanchez-Gomez*. Petn. at 71:2-7. Consistent with this "direction," magistrate judges have made plain they do not believe themselves to be obliged to follow *Sanchez-Gomez* while the stay is in effect.

      Indeed, the government confirms that this is the case, bizarrely asserting that "[d]ecisions regarding the effect of the stay of the mandate are being made by individual magistrate judges *just as they should be*." Resp. at 6 (emphasis added). Contrary to the government's assertion, things are not "just as they should be" when magistrate judges are deciding for themselves whether they must comply with a binding precedent of this Court. The very assertion confirms the pressing

5

need for the injunction that movants seek, as do the examples that the government cites.

The government points to Magistrate Judge John Boyle's request for briefing on the question of his obligation to comply with *Sanchez-Gomez*. *Id*. at 8. But the government neglects to mention that after receiving this briefing and hearing argument, Judge Boyle issued a minute entry "[f]ind[ing], for the reasons stated on the record, that Sanchez-Gomez is *not binding* prior to the issuance of the mandate or further orders of the Courts." App. C at 2 (emphasis added). Judge Boyle proceeded to state that he would allow two defendants on that day's docket to be subject to "reduced unshackling" – but he made plain that this ruling was based, not on *Sanchez-Gomez*, but on his "longstanding discretion." *Id*. Indeed, had Judge Boyle left any ambiguity on that point, it would have been eradicated the very next day, when he summarily denied an unshackling request on the ground that "Sanchez-Gomez is not binding at this time." Petn. at 59:5-13.

The government points to an order issued by Magistrate Judge David Duncan suggesting that at one point he intended to comply with *Sanchez-Gomez* – but the government is compelled to acknowledge (albeit in a footnote) that Judge Duncan retracted the order on the same day, citing "the Circuit's stay of *Sanchez-Gomez*" as his justification. Resp. at 8-9 & n.4. The government suggests that this

6

shows that the chief judge could not have issued a district-wide direction that the judges need not follow *Sanchez-Gomez* while the mandate is stayed. But since the record plainly shows that the chief judge *did* issue such a "direction" (Petn. at 71:2-7), and since there was no other apparent reason for Judge Duncan's sudden about-face, it is likely that Judge Duncan's attention was drawn to the chief judge's direction after he issued his initial order.

The government's reference to a change of plea/sentencing hearing before Magistrate Judge Michelle H. Burns is likewise unavailing. Resp. at 10. Indeed, this transcript shows that Judge Burns fell in line with the district court's policy, asserting that by staying its mandate in *Sanchez-Gomez* this Court "has indicated that the case no longer stands for – is no longer good authority on the positions taken in the opinion." *Id*. Exh. E at 3:13-19. Judge Burns then refused to exercise the discretion to unshackle the defendant that she enjoyed "even the absence [*sic*] of *Sanchez-Gomez*." *Id*. Exh. E at 3:21-4:13. It is unclear how declaring *Sanchez-Gomez* a dead letter, and then refusing to exercise discretion having nothing to do with *Sanchez-Gomez*, constitutes "applying *Sanchez-Gomez*." *Id*. at 10.

Lest there be any possible doubt about the fact that the judges of this district are refusing to comply with *Sanchez-Gomez*, counsel attaches hereto the transcript of a hearing conducted yesterday morning. App. D. In it, Magistrate Judge James F.

7

Metcalf summarily denies an unshackling request, noting his "understanding" that this Court has stayed the mandate in *Sanchez-Gomez*, and confirming that "for the most part, within this district, presiding judges and the respective courts have been following what was the previous general position, I think, of virtually all of the courts within this district, which was to have full restraints in all detained defendant cases." *Id*. at 5:3-9.

In short, the government's factual representations are not accurate. All of the available evidence, including the very cases to which the government points, confirm that the judges of this district do not consider themselves obliged to follow *Sanchez-Gomez*, and that they identify this Court's stay of the mandate in that case as their justification. And so do many more cases too numerous to cite. Because overnight transcripts are expensive to purchase and burdensome to prepare, counsel ordered only a representative sample to attach to the petition and this reply. But counsel's inbox is filled with reports of many more cases, involving both magistrate and district judges, and he has heard of still more in telephone and face-to-face conversations. The reality is that defiance of *Sanchez-Gomez*, justified by the stay of the mandate, is currently the general practice in this district.

### IV. The government's attempt to refute movants' showing that they are likely to succeed on the merits is unconvincing.

When the government finally turns to one of the factors pertinent to the appropriateness of an injunction – movants' likelihood of success on the merits – its arguments are unconvincing.

The government accuses this Court's caselaw on the subject of being "not a model of clarity." Resp. at 15. But this Court has told the government in three published opinions – each time with the utmost "clarity" – that the stay of the mandate does *not* prevent a published opinion of this Court from constituting binding precedent. *Wedbush, Noble, Cooke, Inc. v. SEC*, 714 F.2d 923 (9th Cir. 1983); *Chambers v. United States*, 22 F.3d 939 (9th Cir. 1994), *vacated on other grounds*, 47 F.3d 1015 (9th Cir. 1995); *United States v. Gomez-Lopez*, 62 F.3d 304 (9th Cir. 1995). Petn. at 11-12. The government makes no effort to distinguish these cases, each of which is independently fatal to its argument. Nor does the government make any effort to refute movants' showing that its position is impossible to reconcile with the routine citation practices followed by this Court and by judges and lawyers across the circuit. *Id.* at 18-20. Instead, the government seeks to manufacture ambiguity by discussing the same law-of-the-case decisions that movants have already addressed in their motion and petition. Resp. at 14-18. Rather than rehash the points they have already made regarding these cases (Petn.

9

at 12-16), movants will confine themselves to briefly addressing new points raised in the government's response.

The government argues that because the Eleventh Circuit's rules expressly state that the non-issuance of the mandate does not affect a published opinion's status as precedent, while this Circuit's rules do not, this must not be true in this Circuit. Resp. at 18 n.7. But this Court has no *need* to include such language in its rules, having said precisely the same thing in three published opinions.

The government points to the fact that this Court's mandates generally state that "the judgment of the Court takes effect this date." *Id.* But because this language is consistent with the fact that the mandate's purpose is to identify when "*the parties'* obligations become fixed" (FRAP 41, advisory committee's note to 1998 amendments (emphasis added)), this observation is immaterial.

The government asserts that movants' position would raise a "practical concern" insofar as it would mean that "every district *except* the Southern District of California would be bound by *Sanchez-Gomez* right now." Resp. at 18 n.6. But the government neglects to explain what sort of "practical concern" would arise from such a conclusion, and none is apparent.

Finally, the government posits that this Court's reference in *United States v. Ruiz*, 935 F.2d 1033 (9th Cir. 1991), to the "interim validity" of a published opinion

10

as to which the mandate has not yet issued "resolves many of the practical concerns Petitioners raise." *Id.* (*quoting Ruiz*, 935 F.2d at 1037). What the government appears to be saying is that a published opinion enjoys an "interim validity" as binding precedent even while, because the mandate has not yet issued, it can be withdrawn or modified. In other words, the government is conceding that movants' position regarding the precedential force of a mandate-stayed opinion is correct. Movants have no intention of disputing this (presumably inadvertent) confession of error.

In short, the government fails to sully the clarity of this Court's caselaw on this fundamental point: A published opinion of this Court constitutes the binding law of the circuit regardless of whether the mandate is stayed.

## Conclusion

For the reasons set forth above and in movants' emergency motion and petition for mandamus, this Court should as soon as practicable enter an Order enjoining the District Court of the District of Arizona to comply with this Court's opinion in *Sanchez-Gomez* pending this Court's resolution of movants' petition for writ of mandamus.

Respectfully submitted on July 6, 2017.

> s/*Daniel L. Kaplan*
> DANIEL L. KAPLAN
> Assistant Federal Public Defender
> Attorney for Movants

## **CERTIFICATE OF FILING AND SERVICE**

I hereby certify that I caused the foregoing Reply in Support of Emergency Motion for Injunction Pending Resolution of Petition for Mandamus Under FRAP 8 and Circuit Rule 27-3 to be submitted to the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit on July 6, 2017, using the appellate CM/ECF system.

I further certify that on the same date I caused two copies of the foregoing Reply in Support of Emergency Motion for Injunction Pending Resolution of Petition for Mandamus Under FRAP 8 and Circuit Rule 27-3 to be hand-delivered to Assistant United States Attorney Krissa Lanham, Two Renaissance Square, 40 North Central Avenue, Suite 1200, Phoenix, Arizona 85004-4408, and caused one electronic copy to be delivered to Ms. Lanham via email.

Dated this 6th day of July, 2017.

s/*Daniel L. Kaplan*
DANIEL L. KAPLAN
Assistant Federal Public Defender
*Attorney for Movants*