No. 17-71867

IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

In re RODRIGO ZERMENO-GOMEZ, GUSTAVO HERNANDEZ-
GUTIERREZ, MARTIN RIOS-ARIAS, Petitioners.

RODRIGO ZERMENO-GOMEZ, GUSTAVO HERNANDEZ-GUTIERREZ,
MARTIN RIOS-ARIAS, Petitioners,

v.

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ARIZONA, Respondent Court,

and

UNITED STATES OF AMERICA,
Real Party in Interest.

**REPLY IN SUPPORT OF PETITION FOR WRIT OF MANDAMUS**
D.C. Nos. 17-MJ-09200-ESW-1, CR-17-00803-PHX-DLR (MHB), 17-01387-MJ

JON M. SANDS
Federal Public Defender
District of Arizona

DANIEL L. KAPLAN
Assistant Federal Public Defender
850 West Adams Street, Suite 201
Phoenix, Arizona 85007-2730
(602) 382-2700

# TABLE OF CONTENTS

**<u>PAGE</u>**

Table of Authorities ................................................................................. ii

Introduction .......................................................................................... 1

Argument .............................................................................................. 2

Respondent and the government fail to refute petitioners' showing that
mandamus relief is necessary and appropriate. ...................................... 2

    A.    The factual premises underlying petitioners' request for mandamus
    relief are firmly established. ................................................................ 2

        (1)    Respondent had a policy inconsistent with the holding of
        *Sanchez-Gomez* before that opinion was issued. ....................... 2

        (2)    After this Court stayed the mandate in *Sanchez-Gomez*,
        respondent determined that it is not obligated to comply with
        that opinion while the stay remains in effect. ............................. 4

    B.    The answers do not undermine petitioners' showing that the
    pertinent factors establish the need for a writ of mandamus. ............... 7

        (1)    Petitioners have no other adequate means to obtain the relief
        they seek. .................................................................................. 7

        (2)    Respondent's position regarding its obligation to comply with
        *Sanchez-Gomez* while the mandate is stayed is clearly
        erroneous. ................................................................................. 8

Conclusion ........................................................................................... 18

Certificate of Filing and Service

i

# TABLE OF AUTHORITIES

<u>**PAGE**</u>

## Cases

*Arizona v. Inter Tribal Council of Arizona, Inc.*, 133 S. Ct. 2247 (2013) .................. 10

*Baudler v. Am. Baptist Homes of The W.*, 798 F. Supp. 2d 1099 (N.D. Cal. 2011),
  *modified*, 2011 WL 5555592 (N.D. Cal. Nov. 1, 2011) .......................................... 12

*Bauman v. U.S. Dist. Court*, 557 F.2d 650 (9th Cir. 1977) ......................................... 7

*Birdt v. San Bernardino Sheriff's Dep't*, 2014 WL 2608127
  (C.D. Cal. June 9, 2014) ................................................................................... 12

*Bradford v. HSBC Mortgage Corp.*, 2012 WL 12875878 (E.D. Va. 2012) ................ 14

*Camreta v. Greene*, 563 U.S. 692 (2011) .................................................................... 16

*Carver v. Lehman*, 558 F.3d 869 (9th Cir. 2009) ....................................... 5, 9, 12, 13

*Chambers v. United States*, 22 F.3d 939 (9th Cir. 1994),
  *vacated on other grounds*, 47 F.3d 1015 (9th Cir. 1995) ....................................... 9, 12

*Doe v. Chao*, 511 F.3d 461 (4th Cir. 2007) ............................................................... 14

*Franco-Gonzales v. Holder*, 2011 WL 5966657 (C.D. Cal. Aug. 2, 2011) ................. 12

*Global Naps, Inc. v. Verizon New England, Inc.*, 489 F.3d 13 (1st Cir. 2007) ............11

*Gonzalez v. Arizona*, 677 F.3d 383 (9th Cir. 2012) (en banc) .................................. 10

*Hart v. Massanari*, 266 F.3d 1155 (9th Cir. 2001) .....................................................17

*Holman v. Experian Info. Sols., Inc.*, 2011 WL 2066722
  (N.D. Cal. May 25, 2011) ............................................................................... 11, 12

*In re Fibreboard Corp.*, 893 F.2d 706 (5th Cir. 1990) .................................................17

*In re United States*, 60 F.3d 729 (11th Cir. 1995) ........................................ 10

*Juarez v. Adams*, 2008 WL 5481118 (C.D. Cal. Sept. 10, 2008), *report and recommendation adopted as modified on other grounds*, 2009 WL 57528 (C.D. Cal. Jan. 8, 2009) ......................................................................... 13

*Martin v. Singletary*, 965 F.2d 944 (11th Cir. 1992) ................................... 11

*Nichols v. Harris*, 17 F. Supp. 3d 989 (C.D. Cal. 2014) ............................ 12

*NRDC v. Cty. of Los Angeles*, 725 F.3d 1194 (9th Cir. 2013) ...................... 9

*Paloian v. LaSalle Bank, N.A.*, 619 F.3d 688 (7th Cir. 2010) ..................... 10

*Petrocelli v. Baker*, 2017 WL 2855078 (9th Cir. July 5, 2017) ..................... 7

*SEC v. Amerindo Inv. Advisors, Inc.*, 2014 WL 405339 (S.D.N.Y. Feb. 3, 2014), *aff'd*, 639 F. App'x 752 (2d Cir. 2016) ..................................................... 13

*United States v. Gomez-Lopez*, 62 F.3d 304 (9th Cir. 1995) ................... 9, 12

*United States v. Ruiz*, 935 F.2d 1033 (9th Cir. 1991) .............................. 9, 11

*United States v. Sanchez-Gomez*, 859 F.3d 649 (9th Cir. 2017) (en banc) ......... *passim*

*United States v. Swan*, 327 F. Supp. 2d 1068 (D. Neb. 2004) ................... 14

*Vo Van Chau v. U.S. Dep't of State*, 891 F. Supp. 650 (D.D.C. 1995) ..................... 13

*Wedbush, Noble, Cooke, Inc. v. SEC*, 714 F.2d 923 (9th Cir. 1983) ............ 9, 11, 12, 13

## Rules

Circuit Rule 36-3(a) ..................................................................................... 10

FRAP 41 .................................................................................................. 9, 14

**Other Authorities**

Emily R. Waldman, *Panel Finality Finally Comes to the D.C. Circuit*,
  65 Geo. Wash. L. Rev. 677 (April-June 1997) ..................................................... 10

## Introduction

In their petition for writ of mandamus, petitioners explained why this Court should issue a writ directing respondent United States District Court for the District of Arizona to comply with this Court's opinion in *United States v. Sanchez-Gomez*, 859 F.3d 649 (9th Cir. 2017) (en banc), notwithstanding the stay of the mandate in that case. Pursuant to this Court's order granting an injunction and setting a briefing schedule,[1] respondent and real party in interest the United States (the government) filed answers addressing the petition on July 21, 2017,[2] and petitioners now file their reply. As shown below, the answers do not undermine – in fact in some respects they crucially bolster – petitioners' showing that mandamus relief is necessary. Moreover, pursuant to this Court's injunction, respondent has now been complying with *Sanchez-Gomez* for over a week, and while this has required procedural adjustments, neither respondent nor the government suggests that they have been unduly disruptive or burdensome. Because the pertinent factors are present, and to ensure that in-custody defendants in this district remain as free from unconstitutional shackling as defendants in every other district in this circuit, the Court should grant the writ of mandamus.

---

[1] DktEntry: 11.
[2] DktEntry: 14, 15.

## Argument

### Respondent and the government fail to refute petitioners' showing that mandamus relief is necessary and appropriate.

#### A. The factual premises underlying petitioners' request for mandamus relief are firmly established.

In light of certain assertions contained in the answers, petitioners begin by addressing the essential factual premises of their petition, which are: (1) that, prior to the issuance of *Sanchez-Gomez*, respondent had a policy that shared the fatal flaw of the policy held unconstitutional in *Sanchez-Gomez*, and (2) that after this Court stayed the mandate in *Sanchez-Gomez*, respondent determined that it is not obligated to comply with that opinion while the stay is in effect. Although the government strives to cast doubt on these facts, they are both firmly established.

#### (1) Respondent had a policy inconsistent with the holding of *Sanchez-Gomez* before that opinion was issued.

The second bullet-point in respondent's answer states: "The Court does not have a court policy requiring 5 point restraints. Judges were free to make their own determinations."[3] It is unclear whether this statement is intended to cast doubt on the fact that respondent's protocol with respect to the shackling of in-custody defendants before the issuance of *Sanchez-Gomez* was inconsistent with that opinion's holding. If so, it is misguided.

---

[3] Resp. Ans. at 1.

The policy held unconstitutional in *Sanchez-Gomez* did not require all of the district's judges to impose full shackling in all cases. To the contrary, under that policy judges "retained discretion to 'direct the Marshals to produce an in-custody defendant without restraints.'" *Sanchez-Gomez*, 859 F.3d at 653. But this fact did not prevent this Court from finding the policy unconstitutional. *Id*. at 666. The policy's unconstitutionality inhered in its inclusion of a *presumption* of full shackling for all in-custody defendants. Pursuant to this presumption, full shackling could be – and routinely was – imposed with no individualized request, justification, or finding of necessity. *Id*. at 653-54. Regardless of whether it is labeled a "policy" or simply a "practice" (this Court "d[id]n't see the difference"), such a presumption violates the Constitution, notwithstanding the fact that it permits judges to exercise discretion in individual cases. *Id*. at 653 n.1.

There is no dispute that respondent's policy before the issuance of *Sanchez-Gomez* employed such a presumption. The record includes clear statements to this effect from multiple judges of the respondent court[4]; it was confirmed by a U.S. Marshals Service survey filed with this Court in *Sanchez-Gomez*[5]; it has been the day-to-day experience of Assistant Federal Public Defenders in respondent court

---

[4] DktEntry: 7-5 at 59:1-9; DktEntry: 10-2 at 8:11-18.
[5] *United States v. Sanchez-Gomez*, Nos. 13-50561 *et al*., DktEntry: 9-2 at 21-22 n.12, 117.

for years; it is the reason the government asserts that *Sanchez-Gomez* "fundamentally changed the concepts of dignity and security" in respondent's courtrooms[6]; and it is the reason respondent found it necessary to establish a committee "to make recommendations to the [c]ourt as to how we should comply with *Sanchez*[-*Gomez*]."[7] This policy – which respondent presumably would continue to apply today, had this Court never issued *Sanchez-Gomez* – plainly violates that opinion's holding, regardless of the fact that it permits individual judges to "make their own determinations."

> **(2)** **After this Court stayed the mandate in *Sanchez-Gomez*, respondent determined that it is not obligated to comply with that opinion while the stay remains in effect.**

The government, having succeeded in convincing respondent that it had no obligation to comply with *Sanchez-Gomez* while the mandate was stayed, now labors to obscure the clear proof of its success. Although it does not dispute respondent's pre-*Sanchez-Gomez* practice, the government expends considerable effort seeking to dispute the fact that respondent adopted a "policy" of refusing to treat *Sanchez-Gomez* as binding precedent after the mandate was stayed. But the existence of such a policy is confirmed not only by every piece of pertinent evidence in the record, but also by respondent's answer.

---

[6] Gov. Ans. at 1.
[7] Resp. Ans. at 1.

4

In their petition, petitioners quoted a magistrate judge's statement that he had received a "direction" from respondent's chief judge to the effect that he was not obligated to comply with *Sanchez-Gomez* while the mandate is stayed.[8] Attaching a representative sample of post-stay transcripts, petitioners observed that the practice among judges of the respondent court had been consistent with this "direction."[9] Although the government makes the implausible assertion that the chief judge might have limited this "direction" to a single magistrate judge in Tucson, and strains to raise doubt as to whether it truly reflects the post-stay approach of the judges of respondent court[10], this fact is not open to question.

Respondent's answer – authored by the chief judge himself – makes no effort to deny that he issued the "direction" in question. To the contrary, the answer – filed on behalf of "The United States District Court for the District of Arizona" – expressly acknowledges that "[w]e" believed the stay of the mandate in *Sanchez-Gomez* "gave our committee . . . some time to make thoughtful recommendations."[11] The answer then cites *Carver v. Lehman*, 558 F.3d 869 (9th Cir. 2009) – one of the authorities on which respondent and the government rest their belief that an opinion of this Court lacks binding authority while the mandate

---

[8] Petn. at 3; *id*. App. C at 9:2-7.
[9] *Id*. at 4-6 & Apps. A-C.
[10] Gov. Ans. at 17-18.
[11] Resp. Ans. at 1.

5

is stayed.[12] Respondent's answer thus makes plain that respondent did indeed (prior to this Court's injunction) take the position that its judges are under no obligation to comply with *Sanchez-Gomez* while the mandate is stayed.

In light of this direct admission, little need be said regarding the government's attempts to question this fact. Petitioners merely note that respondent's acknowledgment is consistent with every piece of evidence in the record, including the items filed by the government. Each transcript and order in the record confirms that before this Court entered its injunction, the judges of the respondent court did not believe themselves to be obligated to comply with *Sanchez-Gomez* while the mandate is stayed. The government fails to identify a single contrary example. And the government's citation of instances in which individual judges followed up their refusals to treat *Sanchez-Gomez* as binding with varying exercises of discretion[13] is immaterial, because as noted above, the policy held unconstitutional in *Sanchez-Gomez* likewise allowed for individualized exercises of discretion.

In light of the record's extensive, uniform, and authoritative confirmation of the fact that respondent does not (but for this Court's injunction) consider itself obligated to comply with *Sanchez-Gomez* while the mandate is stayed, the

---

[12] Resp. Ans. at 1; Petn. at 4; *id.* App. A at 5:4-10, App. D at 2-3; Gov. Ans. at 23.
[13] Gov. Ans. at 5-12.

government's assertion that the record is insufficiently developed to establish this fact is baseless.

**B. The answers do not undermine petitioners' showing that the pertinent factors establish the need for a writ of mandamus.**

In their petition, petitioners demonstrated that all of the five factors supporting the appropriateness of mandamus relief are present here. *Bauman v. U.S. Dist. Court*, 557 F.2d 650, 654-55 (9th Cir. 1977).[14] Respondent's answer does not address any of these factors, and the government's answer addresses only the first and third.[15] This Court should accordingly deem the second, fourth, and fifth factors conceded (*Petrocelli v. Baker*, 2017 WL 2855078, at *11 (9th Cir. July 5, 2017)), and petitioners will address only the first and third factors.

**(1) Petitioners have no other adequate means to obtain the relief they seek.**

In their petition, petitioners noted that they seek to vindicate both their individual right to be free of unconstitutional restraint, and the rights of all in-custody defendants affected by respondent's shackling policy while the mandate in *Sanchez-Gomez* is stayed. Petitioners observed that while a measure of relief in their individual cases might be available by way of interlocutory appeal, only a writ of supervisory mandamus could effectively vindicate their "class-like" claims on

---

[14] Petn. at 7-22.
[15] Gov. Ans. at 15-29.

behalf of all in-custody defendants in the District of Arizona. *Sanchez-Gomez*, 859 F.3d at 655. Petitioners further requested that, if necessary to provide relief in their individual cases, the Court construe their petition as an interlocutory appeal.[16]

The government's answer posits that petitioners should be required to challenge the offending shackling rulings before district judges, before seeking mandamus relief.[17] This assertion is misguided for two reasons. First, as petitioners noted in their petition (and the government does not dispute), such case-by-base challenges could not vindicate their request for "class-like" relief on behalf of all in-custody defendants who will appear in respondent court during the pendency of the stay in *Sanchez-Gomez*.[18] Second, even with respect to their individual cases, such challenges would plainly be futile, because respondent's answer confirms that respondent has taken the position that (but-for this Court's injunction) it need not comply with *Sanchez-Gomez* while the stay is in effect.[19]

### (2) Respondent's position regarding its obligation to comply with *Sanchez-Gomez* while the mandate is stayed is clearly erroneous.

Petitioners showed in their petition that respondent's belief regarding the binding effect of *Sanchez-Gomez* while the mandate is stayed is contradicted by

---

[16] Petn. at 8-9.
[17] Gov. Ans. at 20-21.
[18] Petn. at 8-9.
[19] Resp. Ans. at 1.

three published opinions of this Court. *Wedbush, Noble, Cooke, Inc. v. SEC*, 714 F.2d 923 (9th Cir. 1983); *Chambers v. United States*, 22 F.3d 939 (9th Cir. 1994), *vacated on other grounds*, 47 F.3d 1015 (9th Cir. 1995); *United States v. Gomez-Lopez*, 62 F.3d 304 (9th Cir. 1995).[20] Respondent's answer confirms its "belie[f]," but does not defend it.[21] The government's answer attempts to defend it, but its arguments are unconvincing.

The government asserts that respondent's position is supported by *Carver*; *NRDC v. Cty. of Los Angeles*, 725 F.3d 1194 (9th Cir. 2013); *United States v. Ruiz*, 935 F.2d 1033 (9th Cir. 1991); and the advisory committee note to the 1998 amendment to FRAP 41.[22] Petitioners addressed these authorities in their petition, showing that respondent's reliance on them reflects a failure to distinguish between the law of the case doctrine and the law of the circuit doctrine.[23]

The government asserts that this distinction "never has been recognized by any court."[24] This is incorrect. In fact, this Court and many others have recognized the distinction between the law of the case and the law of the circuit doctrines, which is a basic tenet of federal appellate law. *Gonzalez v. Arizona*, 677 F.3d 383,

---

[20] Petn. at 10-12.
[21] Resp. Ans. at 1.
[22] Gov. Ans. at 23-24.
[23] Petn. at 12-18.
[24] Gov. Ans. at 26.

389 n.4 (9th Cir. 2012) (en banc), *aff'd sub nom. Arizona v. Inter Tribal Council of Arizona, Inc.*, 133 S. Ct. 2247 (2013) ("[w]e now hold that the exceptions to the law of the case doctrine are not exceptions to our general 'law of the circuit' rule"); *accord Paloian v. LaSalle Bank, N.A.*, 619 F.3d 688, 692 (7th Cir. 2010) ("The subjects that this opinion pretermits are the law of the case, but not the law of the circuit."); *In re United States*, 60 F.3d 729, 731 n.2 (11th Cir. 1995) (noting that unpublished opinion "may be law of the case insofar as this panel is concerned," but "is not law of this circuit and will not be binding on any future panel in a case involving a different defendant."); *see also* Emily R. Waldman, *Panel Finality Finally Comes to the D.C. Circuit*, 65 Geo. Wash. L. Rev. 677, 679 (April-June 1997) (explaining distinction between "prudential" law of the case doctrine and "statutory" law of the circuit doctrine). The most ubiquitous example of this distinction is unpublished memorandum dispositions, which establish the law of the case but not the law of the circuit. *See* Circuit Rule 36-3(a) ("Unpublished dispositions and orders of this Court are not precedent, except when relevant under the doctrine of law of the case or rules of claim preclusion or issue preclusion."); *In re United States*, 60 F.3d at 731 n.2.

In fact, a district court in this circuit highlighted this well-recognized distinction with respect to the precise question and legal authorities at issue here.

In *Holman v. Experian Info. Sols., Inc.*, 2011 WL 2066722 (N.D. Cal. May 25, 2011), a party argued, citing *Ruiz*, that a mandate-stayed circuit opinion is not binding on a district court. *Id.* at *3 & n.1. The district court rejected the argument, acknowledging the *Ruiz* panel's observation that "relying on a decision subject to a petition for rehearing could be a 'gamble' that might not 'pay off,'" but noting that this observation "does not suggest that the decision lacks precedential value." *Id.* at *3 n.1.

The government further asserts that there is a "split in authority in other Circuits."[25] Even if such a split existed, of course, it would not excuse respondent from complying with this Court's precedent – but in any case, there is no circuit split. The government fails to cite a single circuit court opinion in support of its assertion, and in fact the overwhelming consensus of courts in other circuits – as well as of other district courts within this circuit – is that a stay of the mandate does *not* impair a published opinion's precedential authority. *Global Naps, Inc. v. Verizon New England, Inc.*, 489 F.3d 13, 19 (1st Cir. 2007) (noting that party could have been expected to treat circuit opinion as good law, "notwithstanding the ministerial fact that the mandate had not yet issued") (*citing Wedbush, Noble, Cooke, Inc.*, 714 F.2d at 924); *Martin v. Singletary*, 965 F.2d 944, 945 n.1 (11th Cir. 1992)

---

[25] Gov. Ans. at 23.

("Although the mandate in *Johnson* has not yet issued, it is nonetheless the law in this circuit."); *Raulinaitis v. Ventura Cty. Sheriffs Dep't*, 2014 WL 12685924, at *21 (C.D. Cal. Sept. 30, 2014) (noting that, despite stay of mandate, opinion of this Court "constitutes Ninth Circuit law that this Court must follow"); *Birdt v. San Bernardino Sheriff's Dep't*, 2014 WL 2608127, at *6 (C.D. Cal. June 9, 2014) (noting that, despite possibility of en banc review, opinion of this Court "is governing Ninth Circuit law that lower courts must follow"); *Nichols v. Harris*, 17 F. Supp. 3d 989, 993 (C.D. Cal. 2014), *appeal pending* (No. 14-55873) (noting that decision of this Court "is binding on lower courts as soon as it is published, even before the mandate issues") (*citing*, *inter alia*, *Gomez-Lopez*, 62 F.3d at 306); *Franco-Gonzales v. Holder*, 2011 WL 5966657, at *5 n.7 (C.D. Cal. Aug. 2, 2011) (rejecting party's reliance on *Carver* and noting that "even where a mandate has not yet issued, the judgment filed is nevertheless final for such purposes as *stare decisis*") (*citing Wedbush, Noble, Cooke, Inc.*, 714 F.2s at 924); *Baudler v. Am. Baptist Homes of The W.*, 798 F. Supp. 2d 1099, 1105 n.4 (N.D. Cal. 2011), *modified*, 2011 WL 5555592 (N.D. Cal. Nov. 1, 2011) ("Although the mandate in *Frankl* has not yet issued, the decision 'is nevertheless final for such purposes as stare decisis, and full faith and credit, unless it is withdrawn by the court.'") (*quoting Wedbush, Noble, Cooke, Inc.*, 714 F.2d at 924); *Holman*, 2011 WL 2066722, at *3 (noting that

*Carver* "did not silently overrule *Wedbush*, nor could it"); *Juarez v. Adams*, 2008 WL 5481118, at *12 (C.D. Cal. Sept. 10, 2008), *report and recommendation adopted as modified on other grounds*, 2009 WL 57528 (C.D. Cal. Jan. 8, 2009) ("Respondent argues that, because a petition for rehearing is pending in *Butler v. Curry* and the mandate has not yet issued, the panel decision is not authoritative. This argument is meritless.") (*citing Wedbush, Noble, Cooke, Inc.*, 714 F.2d at 924); *see also SEC v. Amerindo Inv. Advisors, Inc.*, 2014 WL 405339, at *4 (S.D.N.Y. Feb. 3, 2014), *aff'd*, 639 F. App'x 752 (2d Cir. 2016) ("[t]he issuance of the mandate is relevant only to the transfer of jurisdiction from the Circuit to this Court for the criminal case – it has nothing to do with an opinion's precedential authority"); *Vo Van Chau v. U.S. Dep't of State*, 891 F. Supp. 650, 654 (D.D.C. 1995) (noting that stay of mandate in circuit court case is "irrelevant" to district court's obligation to comply with circuit opinion).

Against all of this authority, the government cites two out-of-circuit district court opinions.[26] Setting aside the obvious fact that out-of-circuit district court opinions cannot impair the precedential effect of this Court's published opinions within this circuit, the reasoning of these outlier opinions is patently flawed. Like

---

[26] Gov. Ans. at 24-25.

the government, these district courts failed to recognize the crucial distinction between the law of the case and the law of the circuit.

In *Bradford v. HSBC Mortgage Corp.*, 2012 WL 12875878 (E.D. Va. 2012), the district court cited *Doe v. Chao*, 511 F.3d 461 (4th Cir. 2007), for the proposition that "the decisions of the court of appeals become binding on a district court only after the issuance of the appellate court's mandate." *Bradford*, 2012 WL 12875878, at *1. But *Doe* says nothing of the kind. The *Doe* opinion addressed "the mandate rule" – which it characterized as "a more powerful version of the law of the *case* doctrine" – not the law of the *circuit* doctrine. *Doe*, 511 F.3d at 464 (emphasis added; internal quotation marks omitted). Similarly in *United States v. Swan*, 327 F. Supp. 2d 1068 (D. Neb. 2004), the district court cited the 1998 advisory committee's note to FRAP 41 for the proposition that it could defy a published opinion of the circuit court (*id*. at 1071-72) – failing to take heed of the same note's observation that the "finality" that must await the issuance of the mandate relates only to the question of when "*the parties'* obligation becomes fixed," not to when an opinion becomes the law of the circuit. FRAP 41 advisory committee's note (emphasis added). The government's reliance on these two poorly-reasoned out-of-circuit district court opinions, neither of which was

14

subjected to appellate review, cannot obscure the clear and unanimous holdings of courts within this circuit.

In addition to demonstrating the clear unanimity of the governing caselaw, petitioners noted that respondent's position cannot be reconciled with the routine practices of this Court and the lawyers and judges who practice in this circuit. The government fails to refute these points.

Petitioners observed that respondent's position is inconsistent with this Court's practice of announcing that an opinion as to which en banc rehearing has been granted "shall not be cited as precedent."[27] The government counters that this point is "easily rejected" because when en banc rehearing is granted, the panel opinion loses its authority and "it's necessary to caution litigants not to rely upon" it.[28] But if respondent were correct, the grant of en banc rehearing would have no effect at all upon the panel opinion's precedential force – which would be nullified by the stay of the mandate – and thus no such announcement would be necessary.

Petitioners further observed that respondent's position is refuted by the universal practice of lawyers and judges in this circuit – including judges of respondent court – who routinely cite mandate-stayed opinions as precedent. If respondent's position were correct, this practice would be difficult to explain, and

---

[27] Petn. at 18.
[28] Gov. Resp. at 29.

15

lawyers and judges in this circuit would be required to check the status of the mandate when citing any relatively recent case.[29]

The government does not address the point that this practice in itself demonstrates the implausibility of respondent's position. Instead, the government posits that the adoption of respondent's position would not cause "havoc and calamity," because "courts in the Fourth and Eighth Circuits have long applied the rule that a published decision does not become Circuit law until the mandate issues."[30] In support of this assertion, the government cites the same two district court opinions on which it rested its "split in authority in other Circuits" claim. But two district court opinions – which have no precedential effect even upon the judges who issued them (*Camreta v. Greene*, 563 U.S. 692, 709 n.7 (2011)) – cannot demonstrate that "courts" in those circuits have "long applied" the rule adopted by respondent. In any case, petitioners did not assert that the adoption of respondent's position would bring about "havoc and calamity" – they merely observed that it would "severely complicate[]" the process of citing recent opinions, which is indisputable.[31]

---

[29] Petn. at 18-20.
[30] Gov. Ans. at 29.
[31] Petn. at 19.

In addition to the arguments addressed above, the government complains that a writ of mandamus directing respondent to comply with *Sanchez-Gomez* would constitute a "drastic" act of "massive overreaching" that would unfairly "rebuke" all of the judges of the respondent court and "cut too broadly."[32] These assertions are baseless.

This Court is not guilty of "massive overreaching" when it directs an inferior court to respect its binding precedent. *See Hart v. Massanari*, 266 F.3d 1155, 1170 (9th Cir. 2001) ("A district judge may not respectfully (or disrespectfully) disagree with his learned colleagues on his own court of appeals who have ruled on a controlling legal issue[.]"). A writ of mandamus is not a "rebuke"; it is merely a direction to comply with a clear legal obligation. *See In re Fibreboard Corp.*, 893 F.2d 706, 712 (5th Cir. 1990) (noting that circuit court's grant of petition for mandamus "should not be taken as a rebuke of an able judge"). And here, as in *Sanchez-Gomez*, the writ of mandamus cannot be said to "cut too broadly" in view of the fact – confirmed by respondent's answer[33] – that the respondent court itself has adopted the clearly erroneous legal position in question.

---

[32] Gov. Ans. at 14, 15, 19, 23.
[33] Resp. Ans. at 1.

**Conclusion**

In short, the answers filed by respondent and the government fail to undermine petitioners' showing that mandamus relief is necessary and appropriate here. For the reasons set forth above and in the petition, and to protect the fundamental right of defendants appearing in the respondent court to be free of humiliating, degrading, and unconstitutional shackling, this Court should issue a writ of mandamus directing respondent to comply with *Sanchez-Gomez* notwithstanding the stay of the mandate in that case.

Respectfully submitted on July 26, 2017.

 s/*Daniel L. Kaplan*
DANIEL L. KAPLAN
Assistant Federal Public Defender
Attorney for Petitioners

## <u>CERTIFICATE OF FILING AND SERVICE</u>

I hereby certify that I caused the foregoing Reply in Support of Petition for Writ of Mandamus to be submitted to the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit on July 26, 2017, using the appellate CM/ECF system.

I further certify that on the same date I caused two copies of the foregoing Reply in Support of Petition for Writ of Mandamus to be hand-delivered to Assistant United States Attorney Krissa Lanham, Two Renaissance Square, 40 North Central Avenue, Suite 1200, Phoenix, Arizona 85004-4408, and caused one electronic copy to be delivered to Ms. Lanham via email.

I further certify that on the same date I caused one copy of the foregoing Reply in Support of Petition for Writ of Mandamus to be hand-delivered to the following members of respondent court:

> HONORABLE JOHN Z. BOYLE
> United States District Court
> Sandra Day O'Connor U.S. Courthouse, Suite 322
> 401 West Washington Street, SPC 75
> Phoenix, AZ 85003-2160
>
> HONORABLE EILEEN S. WILLETT
> United States District Court
> Sandra Day O'Connor U.S. Courthouse, Suite 321
> 401 West Washington Street, SPC 13
> Phoenix, AZ 85003-2120

HONORABLE JAMES F. METCALF
United States District Court
John M. Roll U.S. Courthouse
98 West 1st Street, Suite 2400
Yuma, AZ 85364

Dated this 26th day of July, 2017.

s/*Daniel L. Kaplan*
DANIEL L. KAPLAN
Assistant Federal Public Defender
*Attorney for Petitioners*